# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES' RETIREMENT TRUST, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**RH, INC., ET AL.,**<br><br>Defendants. | CASE NO. 17-cv-00554-YGR<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS**<br><br>Re: Dkt. No. 94 |

Plaintiffs bring this putative class action against defendants RH, Inc. ("RH"), Gary Friedman, and Karen Boone for alleged violations of Section 10(b) of the Securities Exchange Act of 1934. (Dkt. No. 45, Consolidated Class Action Complaint ("CCAC") (citing 15 U.S.C. § 78(b)).) Now before the Court is plaintiffs' motion for (1) certification of the following class: "All persons and entities who purchased or otherwise acquired the common stock of Restoration Hardware Holdings, Inc. ("RH") during the period from March 26, 2015 through June 8, 2016, inclusive (the "Class")"; (2) appointment of lead plaintiffs Public School Teachers Pension & Retirement Fund of Chicago ("Chicago Teacher") and Arkansas Teacher Retirement System ("Arkansas Teacher") as Class Representatives; and (3) appointment of Bernstein Litowitz Berger & Grossman LLP as Class Counsel. (Dkt. No. 94 ("Motion").) Having carefully reviewed the papers submitted and oral arguments at the hearing held on October 1, 2018, and for the reasons set forth more fully below, the Court **GRANTS** plaintiffs' motion.

**I.   BACKGROUND**

The facts at issue in this case, as pleaded in plaintiffs' 100-page Consolidated Class Action Complaint, are well-known to the parties; relevant facts from the Complaint are set forth below. (*See* CCAC.)

1    Plaintiffs bring the instant action on behalf of purchasers of RH stock between March 26, 2015 and June 8, 2016 (the "Class Period"). (CCAC ¶ 1.) Plaintiffs allege that statements RH made during the Class Period about the launch of a new home furnishing line, RH Modern, and statements about RH's inventory were misleading, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(b). (*Id.* ¶¶ 178-202.) Specifically, plaintiffs allege that RH launched RH Modern knowing that it had not ordered sufficient product to support the launch. (*Id.*) Plaintiffs allege more than two-dozen false statements between the start of the Class Period, March 26, 2015, and March 29, 2015. (*Id.* 178-202.) They also allege four corrective disclosure dates starting on December 10, 2015 and ending on June 8, 2016, when plaintiffs allege that RH revealed the truth about RH Modern's inventory shortfalls. (*Id.* ¶¶ 10-11.)

Plaintiffs filed the instant motion on June 22, 2018. (Motion.) Lead plaintiffs and proposed class representatives in this action are Arkansas Teacher and Chicago Teacher. Arkansas Teacher is a frequent plaintiff in securities class actions and is currently serving as lead plaintiff or class representative in eleven securities class actions. (Dkt. No. 101-3, Trans. of Deposition of Rodney Graves ("Graves Depo.") at 19:22-25.) Arkansas Teacher has two employees who oversee these matters, both of whom do so on a part-time basis. (*Id.* at 22:1-7, 16:20-19:7.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(a), a court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements as "numerosity, commonality, typicality[,] and adequacy of representation." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

Once the threshold requirements of Rule 23(a) are met, plaintiffs must then show "through evidentiary proof" that a class is appropriate for certification under one of the provisions in Rule 23(b). *Comcast Corp. v. Behrend*, 599 U.S. 27, 33 (2013). Here, plaintiffs seek certification under

Rule 23(b)(3), which requires plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Dukes*, 564 U.S. at 351); *see also Mazza*, 666 F.3d at 588. The Court considers the merits to the extent they overlap with the Rule 23 requirements. *Ellis*, 657 F.3d at 983. The Court must resolve factual disputes as "necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*." *Id.* (emphasis in original). "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" *Aburto v. Verizon Cal., Inc.*, No. 11-CV-03683, 2012 WL 10381, at *2 (C.D. Cal. Jan. 3, 2012) (quoting *Ellis*, 657 F.3d at 982), *abrogated on other grounds as recognized by Shiferaw v. Sunrise Sen. Living Mgmt., Inc.*, No. 13-CV-2171, 2014 WL 12585796, at * 24n. 16 (C.D. Cal. June 11, 2014). "A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule." *Dukes*, 564 U.S. at 350. Ultimately, the Court exercises its discretion to determine whether a class should be certified. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

**III. DISCUSSION**

**A. Classwide Applicability of Common Methodology for Measurement of Damages**

Rule 23(b)(3) "requires a court of to find that 'the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). "Considering whether 'questions of law or fact common to the class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810

3

(2011). To establish liability on their Section 10(b) claims, plaintiffs must show economic loss, or damages. *See id.* Accordingly, for the purposes of Rule 23(b)(3), it is plaintiffs' burden to show that common damages issues predominate individual damages issues. *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *cert. granted on other grounds*, 138 S. Ct. 2675 (2018). *Lambert* affirmed the Ninth Circuit's longstanding rule that "uncertain damages calculations should not defeat certification . . . as long as a valid method has been proposed for calculating those damages."[1] *See id.*, at 1182.

As a preliminary matter, the out-of-pocket, or event study, method is the standard measurement of damages in Section 10(b) securities cases. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155 (1972) (out-of-pocket method is "the correct measure of damages" in Exchange Act case); *see also*, *Hatamaian v. Advanced Micro Devices, Inc.*, No.: 14-cv-00226, 2016 WL 1042502, at *8 (N.D. Cal. Mar. 16, 2016). Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Securities Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b) class action. *See e.g.*, *In re SanDisk LLC Sec. Litig.*, 2018 WL 4293336, at *2 (N.D. Cal. Sept. 4, 2018) ("The out-of-pocket method is widely considered an accepted method for the evaluation of materiality damages to a class of stockholders in a defendant corporation.").[2]

---

[1] *Lambert* acknowledged and harmonized the change in law worked by *Comcast v. Behrend*, in which the Supreme Court held that class certification required a "rigorous analysis" to determine that plaintiffs offer a valid damages model. *See Comcast v. Behrend*, 569 U.S. 27, 35 (2013). This stands in contrast to pre-*Comcast* decisions allowing class certification based on an inquiry "limited to whether or not the proposed method is so insubstantial as to amount to no method at all." *In re Static Random Access Memory (SRAM) Antitrust Litigation*, 264 F.R.D. 603, 615 (N.D. Cal. 2009).

[2] *See also Angley v. UTI Worldwide Inc.*, 311 F. Supp. 3d 1117, 1129 n.20 (C.D. Cal. 2018) (collecting cases); *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1184 (N.D. Cal. 2017) (Plaintiffs' "proposed method—using an event study—is widely accepted for calculating damages of a class of stockholders."); *Baker v. SeaWorld Entm't Inc.*, 2017 WL 5885542, at *12-13 (S.D. Cal. Nov. 29, 2017) (rejecting the assertion that "Plaintiffs fail to proffer a class-wide method for computing damages" and offer only "a hypothetical damages model" because "Plaintiffs contend that they will utilize the standard measures of damages in virtually all Section 10(b) cases—the out-of-pocket methodology."); *Basile v. Valeant Pharm. Int'l, Inc.*, 2017 WL 3641591, at *14 (C.D. Cal. Mar. 15, 2017) (under the out-of-pocket method, "'the amount of price

4

1  Defendants aver that plaintiffs' "failure to describe a specific method is fatal to certification because there is no way for the Court to determine whether the proposed methodologies will measure damages that are solely attributable to plaintiffs' theory of liability." (Opp. at 10 (citing *Doyle*, 663 F. App'x at 579) (internal quotations omitted).) However, in *Doyle*, the Ninth Circuit faulted plaintiffs' method for calculating damages for failed to "measure only the damages that are attributable to the theory of liability." Here, plaintiffs assert a fraud-on-the-market theory of liability, accordingly, the method proposed by plaintiffs—which is based on an economic valuation analyzing the extent to which the disclosure(s), correcting the alleged misrepresentations and omissions, caused the price of RH stock to fall—will limit damages to those that are attributable to that theory of liability. *See Nursing Home Pension Fund v. Oracle Corp.*, 2006 WL 8071391, at *11 n. 4 (N.D. Cal. Dec. 20, 2006) (finding that the out-of-pocket method, which "consist[]]s of an event study and analysis of price movement attributable to company specific events," is "[t]he methodology used to calculate damages in fraud-on-the-market cases [and] is well-established.") Moreover, unlike in *Doyle*, there are no individualized issues regarding liability.[3]

In support of their second agreement, that plaintiffs' proposed method does not contain anything that "addresses any of the specific of this litigation," defendants aver that "Dr. Feinstein could replace the two referenced to 'RH' with the name of another company and come to the conclusion that this same general methodology would apply in any other set of circumstances involving securities litigation." (Opp. at 5.) However, this assertion seems to reflect the fact that securities fraud cases fit Rule 23 "like a glove," rather than suggest that class treatment is inappropriate. *See Epstein, MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995); *see also Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *9 (N.D. Cal. June 28, 2015). As noted above, plaintiffs' damages method is specifically tied to plaintiffs' claims under Section 10(b) and

---

inflation during the period can be charted and the process of computing individual damages will be virtually a mechanical task'" (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

[3] The Court is unpersuaded by defendants' argument at the October 1, 2018 hearing that this case is much more complicated than those cases in which courts have approved use of a out-of-pocket or event theory method of damages calculation.

5

provides for damages equal to the inflation of RH's stock price that is attributable to the alleged misstatements and omissions.

Finally, defendants' argument that the plaintiffs' proposed method fails "to demonstrate how one would measure inflation using any 'standard tools of valuation' if it cannot be measured using an event study" is essentially an assertion that plaintiffs' method will result in incorrect calculations. However, this criticism prematurely addresses the quantification and allocation of damages, which courts consistently find are not appropriately raised at the class certification stage. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("damage calculations alone cannot defeat certification"). Additionally, the Ninth Circuit has held that plaintiffs are not required to prove their damages with "exact proof" at the certification stage. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 970 (9th Cir. 2013). Accordingly, the Court finds that plaintiffs have established a common methodology for measurement of damages that is applicable classwide.

## B. Adequacy of Proposed Class Representative Arkansas Teacher

"To determine whether a plaintiff will adequately serve the class, courts consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Lendingclub Sec. Litig.*, 282 F.Supp.3d 1171, 1182 (N.D. Cal. 2017). Here, it is undisputed that neither lead plaintiff has any conflict with any Class member. Defendants' argument that that the Court should not appoint Arkansas Teacher as a Class Member rests entirely on the second factor. (Opp. at 15-17.) Specifically, defendants assert three facts in support of their argument that Arkansas Teacher cannot vigorously prosecute the instant action: (1) there are only two individuals at Arkansas Teacher who have spent any time on this case; (2) Arkansas Teacher had no knowledge of any issues with its RH holdings before being approached by Class Counsel; and (3) Chicago Teacher has "apparently taken the laboring oar in supervising class counsel." (*Id.* at 15-16.) Moreover, defendants point to the fact that Arkansas Teacher is currently overseeing eleven securities class actions pending in federal district court.

As a preliminary matter, defendants fail to identify any deficiencies in Arkansas Teacher's

prosecution in this case. Instead, they essentially argue that Arkansas Teacher is too busy and has not had enough involvement to date. Arkansas Teacher has actively participated in this litigation. Its deputy director duly prepared as a designee to testify in response to defendants' Rule 30(b)(6) notice, which required testimony on 49 topics, and traveled to San Francisco to do so. The Court is unpersuaded, and defendants' do not provide support for the idea, that the fact that class counsel approached Arkansas Teacher has any bearing on its adequacy as a class representative. Finally, courts have recognized that multiple securities suits by an *institutional* investor "evince a laudatory zeal to fulfill its fiduciary duties." *Naiditch v. Applied Micro Circuits Corp.*, 2001 WL 1659115, at *3 (S.D. Cal. Nov. 5, 2001). Moreover, Arkansas Teacher's status as an *institutional investor* means that the "5-and-4 cap" in the PSLRA does not apply. *In re Extreme Networks Inc. Sec. Litig.*, 2016 WL 3519283, at *7-8 (N. D. Cal. June 28, 2016). Accordingly, the Court finds that plaintiffs have established that Arkansas Teacher can adequately represent the Class.

**IV. CONCLUSION**

For the reasons discussed above, the Court **GRANTS** plaintiffs' motion for class certification.

**IT IS SO ORDERED.**

Dated: October 11, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**