1

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP

2

JONATHAN D. USLANER (Bar No. 256898)

3

jonathanu@blbglaw.com
12481 High Bluff Drive, Suite 300

4

San Diego, CA 92130
Tel:    (858) 793-0070

5

Fax:   (858) 793-0323

6

*Counsel for Lead Plaintiffs Public School*

7

*Teachers' Pension & Retirement Fund of*
*Chicago and Arkansas Teacher Retirement*

8

*System and Lead Counsel for the Class*

9

[Additional counsel appear on signature page]

10

11

12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

13

OAKLAND DIVISION

14

15

IN RE RH, INC. SECURITIES
LITIGATION

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 4:17-00554-YGR

ECF CASE

**LEAD PLAINTIFFS' NOTICE OF
UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT, AND
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT
THEREOF**

Judge:    Hon. Yvonne Gonzalez Rogers
Courtroom:  1
Date:     June 18, 2019
Time:     2:00 p.m.

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ..................................................................................... iii

NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
    SETTLEMENT .............................................................................................. vi

STATEMENT OF ISSUES TO BE DECIDED ....................................................... vii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.      PRELIMINARY STATEMENT ................................................................... 1

    A.    Factual Background ........................................................................... 3

    B.    Procedural History ........................................................................... 3

    C.    Settlement Negotiations ................................................................... 6

II.    THE PROPOSED SETTLEMENT ............................................................... 6

    A.    The Terms Of The Settlement.......................................................... 6

    B.    The Plan Of Allocation .................................................................... 8

III.   ARGUMENT ................................................................................................ 8

    A.    The Court Should Grant Preliminary Approval Of The Proposed
          Settlement ......................................................................................... 8

          1.    The Proposed Settlement Is The Product Of Good Faith,
               Arm's-Length Negotiations Among Experienced Counsel
               Mediated By An Experienced Private Mediator ......................... 9

          2.    The Proposed Settlement Has No Obvious Deficiencies And
               Does Not Improperly Grant Preferential Treatment To Class
               Representatives Or Segments Of The Class............................. 11

          3.    The Proposed Settlement Falls Well Within The Range Of
               Reasonableness And Warrants Notice And A Hearing On Final
               Approval ..................................................................................... 11

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE................... 14

V.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE
    AND THE PROPOSED PLAN FOR PROVIDING NOTICE TO THE
    CLASS AND PROCESSING CLAIMS ........................................................ 15

    A.    Retention of A.B. Data..................................................................... 15

    B.    Proposed Notice Procedures ............................................................ 16

C.      Claims Processing ................................................................... 18

D.      Estimated Notice and Administrative Costs ........................................ 18

VI.    ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFFS'
       EXPENSES ................................................................................ 19

VII.   PROPOSED SCHEDULE OF EVENTS ....................................................... 20

VIII.  CONCLUSION .............................................................................. 21

# TABLE OF AUTHORITIES

CASES                                                                                       PAGE(S)

*In re Biolase, Inc. Sec. Litig.*,
    2015 WL 12720318 (C.D. Cal. Oct. 13, 2015).........................................................................13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ..........................................................................................11

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................7, 8, 14, 15

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .....................................................................13

*Hatamian v. Advanced Micro Devices, Inc.*,
    Case No. 4:14-cv-00226-YGR (N.D. Cal. Mar. 2, 2018), ECF No. 363 ...................................8

*Hatamian v. Advanced Micro Devices, Inc.*,
    Case No. 4:14-cv-00226-YGR (N.D. Cal. Mar. 2, 2018), ECF No. 364 .................................19

*Hatamian v. Advanced Micro Devices, Inc.*,
    Case No. 4:14-cv-00226-YGR (N.D. Cal. Mar. 6, 2018), ECF No. 367 ...................................7

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................................20

*Hefler v. Wells Fargo & Co.*,
    Case No. 3:16-cv-05479-JST (N.D. Cal. Dec. 20, 2018), ECF No. 253 ...................................8

*Huddlestun v. Harrison Glob., LLC*,
    2018 WL 3752368 (S.D. Cal. Aug. 7, 2018) ....................................................................8, 9

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)..................................................................10

*In re Int'l Rectifier Corp. Sec. Litig.*,
    Case No. 2:07-cv-02544-JFW (C.D. Cal. Feb. 8, 2010), ECF No. 316 .................................19

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ..........................................................................................8

*Linney v. Cellular Alaska P'ship*,
    1997 WL 450064 (N.D. Cal. July 18, 1997)........................................................................9

*Louie v. Kaiser Found. Health Plan, Inc.*,
    2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) .....................................................................12

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
  2017 WL 6040065 (N.D. Cal. Dec. 6, 2017), *aff'd*,
  2019 WL 1752610 (9th Cir. Apr. 17, 2019) ..................................................................20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................................9

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................................9

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................10, 13

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ....................................................................................19

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 1991529 (N.D. Cal. June 30, 2007) ...........................................................18

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ......................................................................................7

*Reynolds v. Direct Flow Med., Inc.*,
  2019 WL 1084179 (N.D. Cal. Mar. 7, 2019) ..............................................................11

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .............................................................10

*In re Sorbates Direct Purchaser Antitrust Litig.*,
  2002 WL 31655191 (N.D. Cal. Nov. 15, 2002) .........................................................18

*St. Louis Police Ret. Sys. v. Severson*,
  2014 WL 3945655 (N.D. Cal. Aug. 11, 2014) ...........................................................20

*Stewart v. Applied Materials, Inc.*,
  2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ...........................................................10

*In re Sunpower Sec. Litig.*,
  Case No. 3:09-cv-5473-RS (N.D. Cal. July 3, 2013), ECF No. 268 ...........................7

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................................9

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...................................................................................20

*West v. Circle K Stores, Inc.*,
  2006 WL 1652598 (E.D. Cal. June 13, 2006) ..............................................................8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2019 WL 387322 (N.D. Cal. Jan. 30, 2019) ........................................................................9

*Young v. Polo Retail, LLC,*
  2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) .................................................................... 11

**STATUTES, RULES & REGULATIONS**

15 U.S.C.
  § 78u-4(a)(4) ...................................................................................................................... 20
  § 78u-4(a)(7) ...................................................................................................................... 16

28 U.S.C.
  § 1715 (2005) ..................................................................................................................... 17

Federal Rules of Civil Procedure
  Rule 23(c)(2)(B) ................................................................................................................ 17
  Rule 23(e)(1) ....................................................................................... 1, 8, 9, 11, 17
  Rule 23(e)(2) ........................................................................................................................8

## NOTICE OF UNOPPOSED MOTION

## FOR PRELIMINARY APPROVAL OF SETTLEMENT

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that Lead Plaintiffs Public School Teachers' Pension & Retirement Fund of Chicago and Arkansas Teacher Retirement System hereby move for an order pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure that will: (1) preliminarily approve the proposed Settlement of this Action; (2) approve the form and manner of giving notice of the proposed Settlement to the Class; and (3) schedule a final settlement hearing before the Court to determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses should be approved.[1] The motion is noticed for a hearing on June 18, 2019, at 2:00 p.m. before the Honorable Yvonne Gonzalez Rogers, United States District Judge, at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, but, as the motion is unopposed, the Parties agree that it may be decided on the papers at this time and before the deadline for any opposition and without a hearing.

The grounds for this motion are that the proposed Settlement is within the range of what could be found to be fair, reasonable, and adequate and that notice of its terms is appropriate and may be disseminated to members of the proposed Class and a hearing for final approval of the proposed Settlement scheduled.

This motion is supported by the following memorandum of points and authorities in support thereof, and the Stipulation and Agreement of Settlement dated May 6, 2019, and the exhibits thereto, which embody the terms of the proposed Settlement between the Parties, submitted herewith, the previous filings and orders in this case, and such other and further representations as may be made by counsel at any hearing on this matter.

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation, attached as Exhibit 1.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed $50 million cash settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the proposed Class.

2.      Whether the proposed form of settlement notice and proof of claim and release form and the manner for dissemination to the Class should be approved.

3.      Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and the application of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Lead Plaintiffs Public School Teachers' Pension & Retirement Fund of Chicago and Arkansas Teacher Retirement System ("Lead Plaintiffs") respectfully submit this memorandum of points and authorities in support of their unopposed motion, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, for preliminary approval of the proposed settlement (the "Settlement") of this class action.  As this motion is unopposed, the Parties agree that it may be decided on the papers at this time.

The Settlement, as set forth in the Stipulation and Agreement of Settlement dated as of May 6, 2019 (the "Stipulation"), attached hereto as Exhibit 1, provides for a payment of $50 million in cash into an escrow account for the benefit of the Class.   Lead Plaintiffs submit that the Settlement represents an excellent result for the Class and ultimately should be approved by this Court, especially given the risks, costs, and delays of continued litigation, including an expected motion for summary judgment, trial, and appeals that would be taken from any verdict for the Class at trial.

The Settlement was reached only after months of arms'-length negotiations between the Parties, which included two separate mediation sessions with former United States District Judge Layn R. Phillips, an experienced and highly respected mediator of complex class actions, and was based on a mediator's recommendation made by Judge Phillips.   Prior to entering into the Settlement, Lead Plaintiffs and Lead Counsel had conducted a thorough investigation of the claims; filed a detailed amended complaint; defeated Defendants' motion to dismiss; consulted extensively with experts; and engaged in substantial fact discovery, which involved obtaining and reviewing more than 10 million pages of documents from Defendants and third parties and taking or defending 15 depositions.  Accordingly, Lead Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims in the Action at the time the Settlement was reached.

Lead Plaintiffs and Lead Counsel believe that the Settlement represents an excellent result for the Class based on the risks and possible outcomes of the litigation.  Depending upon the

outcome of certain disputes, Lead Plaintiffs may have recovered nothing or substantially less than the Settlement Amount.  Here, Lead Plaintiffs and the Class would face substantial obstacles in proving that the Defendants' alleged misstatements were false, that Defendants acted with scienter, in establishing loss causation, and demonstrating the full amount of the Class's damages.  For example, Lead Plaintiffs would face significant challenges in proving that Defendants' statements about the launch of RH Modern and the Company's inventory levels were false when made.  Defendants would argue at summary judgment and trial that the Company had simply suffered unexpected short-term supply chain issues and, accordingly, their statements were accurate when made.  Defendants would also argue that, even if any of their statements were false or misleading, they did not have an intent to mislead investors.  Defendants would further contend that they had no motive to commit fraud and that the Individual Defendants did not benefit from the alleged fraud.

Even if falsity and scienter could be established, Defendants would argue that Lead Plaintiffs would have difficulty establishing loss causation because certain of the disclosures were not clearly corrective of the previously alleged misstatements.  Defendants would also contend that all or most of the stock price declines following the alleged disclosures resulted from other news released by the Company on those dates, unrelated to the alleged fraud, such as lower than projected net revenues, and that Lead Plaintiffs would not be able to disaggregate the effect of any fraud-related disclosures in order to prove damages or, if they could do so, the damages resulting from disclosure of the alleged fraud would be substantially smaller.  In light of all these risks and the costs and delays of further litigation, Lead Plaintiffs and Lead Counsel believe the $50 million Settlement represents an excellent resolution of the Action for the Class.

Lead Plaintiffs request that this Court enter the Proposed Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") attached as Exhibit A to the Stipulation and as Exhibit 2 hereto.  The Preliminary Approval Order, among other things: (i) schedules a final hearing to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the proposed Plan of Allocation of the Net Settlement Fund, and Lead Counsel's application for attorneys' fees and expenses (the "Settlement Hearing"); (ii) preliminarily approves

the Settlement as fair, reasonable, and adequate to the Class, pending the Settlement Hearing; (iii) approves the form and method of disseminating notice to the Class; (iv) appoints the claims administrator recommended by Lead Counsel to disseminate notice and administer the Settlement; and (v) establishes procedures and deadlines for Class Members to submit Claim Forms for payments from the Net Settlement Fund, request exclusion from the Class, or object to the terms of the Settlement, Plan of Allocation, and/or requested fees and expenses.

### A.   Factual Background

The allegations and claims in this Action are familiar to the Court and detailed in the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 45) (the "Complaint").  In short, Lead Plaintiffs allege that, from March 26, 2015 through June 8, 2016 (the "Class Period"), Defendants made misrepresentations to investors about important elements of RH's business including the launch of its new RH Modern line and about the Company's inventory levels  Lead Plaintiffs allege that those misrepresentations and omissions artificially inflated the price of RH stock during the Class Period, and that the stock price fell through a series of partial disclosures of the alleged misstatements beginning on December 10, 2015 and concluding on June 8, 2016.

Defendants deny any wrongdoing.  Defendants contend that they made no material misstatements or omissions during the Class Period and that, in any event, Class Members were not damaged by the alleged misstatements.  Moreover, Defendants could point to the fact that there was no SEC or other government investigation of the alleged fraud, that there was never any restatement of RH's financial statements, and that RH's stock price swiftly rebounded and today trades at a higher price than the highest price during the Class Period.

### B.   Procedural History

On February 2, 2017, a class action complaint, styled *City of Miami General Employees' & Sanitation Employees' Retirement Trust v. RH, Inc., et al.*, Case No. 4:17-cv-00554-YGR, was filed in the United States District Court for the Northern District of California (the "Court") asserting violations of federal securities laws against RH and the Individual Defendants.  (ECF No. 1.)  In accordance with the Private Securities Litigation Reform Act of 1995, 15 U.S.C.

§ 78u-4 (the "PSLRA"), notice to the public was issued stating the deadline by which putative class members could move the Court for appointment as lead plaintiff. A related securities class action complaint, *Errichiello v. RH*, Case No. 3:17-cv-01425-WHO ("*Errichiello*"), was filed in the Court on March 16, 2017.

Public School Teachers' Pension & Retirement Fund of Chicago and Arkansas Teacher Retirement System moved for appointment as Lead Plaintiffs on April 3, 2017, as did several other groups of competing movants. (ECF Nos. 7-26.) On April 26, 2017, the Court entered an Order which provided that the case be recaptioned as *In re RH, Inc. Securities Litigation,* Case No. 4:17-cv-00554-YGR (the "Action"); ordered that *Errichiello* be consolidated into the Action and that any subsequently filed, removed, or transferred actions related to the claims asserted in the Action be consolidated; appointed Public School Teachers' Pension & Retirement Fund of Chicago and Arkansas Teacher Retirement System as Lead Plaintiffs for the Action; and approved Lead Plaintiffs' selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel for the Class. (ECF No. 39.)

On June 12, 2017, Lead Plaintiffs filed and served the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 45) asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. The Complaint alleges that, during the Class Period, Defendants made materially false and misleading statements about the launch of RH's new product line, RH Modern, and the Company's inventory levels. The Complaint further alleges that the price of RH common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements and declined when the truth was revealed.

On August 2, 2017, Defendants filed and served a motion to dismiss the Complaint (ECF No. 50) and a request that the Court consider documents incorporated by reference in the Complaint and take judicial notice of other documents submitted to the Court. (ECF No. 51.) On September 11, 2017, Lead Plaintiffs filed and served memoranda of law in opposition to Defendants' motion to dismiss and request for judicial notice. (ECF Nos. 53-54.) On October 6,

2017, Defendants filed and served reply papers in support of their motion and their request for judicial notice and made a supplemental request for judicial notice. (ECF Nos. 56-58.) On October 13, 2017, Lead Plaintiffs filed objections to reply evidence accompanying Defendants' reply papers. (ECF No. 59.)

The Court held oral argument on the motion to dismiss and related request for judicial notice on October 31, 2017. (ECF Nos. 60, 63.) On February 26, 2018, the Court entered an Order which denied Defendants' motion to dismiss. (ECF No. 68.) Defendants filed their Answer to the Complaint on April 10, 2018. (ECF No. 78.)

Discovery in the Action commenced in March 2018. Lead Plaintiffs prepared and served initial disclosures, requests for production of documents, and interrogatories on Defendants, exchanged numerous letters with Defendants concerning discovery issues, and served dozens of document subpoenas on third parties. Defendants and third parties produced a total of over 10 million pages of documents to Lead Plaintiffs, and Lead Plaintiffs produced over 12,000 pages of documents to Defendants in response to their requests. Fifteen depositions were taken in the Action, which included depositions of representatives of both Lead Plaintiffs and of Defendants' expert witness taken in connection with the motion for class certification, and twelve depositions of fact witnesses.

On June 22, 2018, Lead Plaintiffs filed their motion for class certification, which was accompanied by a report from Lead Plaintiffs' expert, Dr. Steven Feinstein, which opined that RH common stock traded in an efficient market during the Class Period and that per-share damages could be measured for all Class Members using a common methodology. (ECF Nos. 94-95.) On August 14, 2018, Defendants filed their opposition to the class certification motion, which included an expert report challenging Dr. Feinstein's conclusion regarding the common damages methodology. (ECF No. 101.) Lead Plaintiffs filed reply papers in further support of their motion on September 11, 2018. (ECF Nos. 103-104.)

On October 1, 2018, the Court held oral argument on Lead Plaintiffs' motion for class certification. (ECF Nos. 108, 110.) On October 11, 2018, the Court granted the motion, certifying the proposed Class, appointing Lead Plaintiffs as Class Representatives and appointing

BLB&G as Class Counsel.  (ECF No. 111.)  On October 25, 2018, Defendants filed a petition to appeal the Court's order certifying the Class to the Court of Appeals for the Ninth Circuit pursuant to Rule 23(f) of the Federal Rules of Civil Procedure.  (ECF No. 112.)  The Court of Appeals denied that petition on January 24, 2019.  (ECF No. 121.)

### C.      Settlement Negotiations

While discovery and the briefing of Lead Plaintiffs' class certification motion were ongoing, the Parties agreed to discuss the possibility of resolving the Action through settlement and scheduled a mediation with former United States District Judge Layn R. Phillips, an experienced mediator of complex litigation.  On August 6, 2018, in advance of the mediation, the Parties exchanged detailed mediation statements with numerous exhibits that were also submitted to Judge Phillips.  A full-day, in-person mediation session with Judge Phillips was held on August 24, 2018.  At the mediation session, the Parties engaged in vigorous settlement negotiations with the assistance of Judge Phillips but were not able to reach an agreement.

Following certification of the Class, the Parties scheduled a second mediation session before Judge Phillips for March 1, 2019.  In advance of that session, the Parties submitted and exchanged supplemental mediation statements on February 15, 2019.  After a full-day, in-person mediation session on March 1, 2019, Judge Phillips issued a mediator's proposal on March 3, 2019, and the Parties continued their negotiations in the weeks immediately following the mediation.  On March 21, 2019, the Parties executed a Term Sheet setting forth their agreement in principle to settle the Action in return for Defendants causing payment of $50,000,000 in cash to be paid for the benefit of the Class.

On May 6, 2019, the Parties executed the Stipulation setting forth the full terms and conditions of the Settlement.

## II.      THE PROPOSED SETTLEMENT

### A.      The Terms Of The Settlement

The Settlement provides that Defendants will cause $50 million in cash to be paid into an interest-bearing escrow account for the Class.  The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Notice and

1   Administration Costs, and Taxes and related expenses (the "Net Settlement Fund"), will be

2   distributed among Class Members who submit valid Claim Forms ("Authorized Claimants"), in

3   accordance with a plan of allocation to be approved by the Court.

4        The Settlement, if approved by the Court, will apply to the Class that was certified by the

5   Court in its October 11, 2018 Order – "all persons and entities who purchased or otherwise

6   acquired the common stock of RH during the period from March 26, 2015 through June 8, 2016,

7   inclusive" – with only minor refinements.  *See* Stipulation ¶ 1(h).[2]

8        In exchange for the payment of the Settlement Amount, Class Members will release the

9   "Released Plaintiffs' Claims."    Stipulation ¶ 1(pp).    The Settlement's release provision is

10  consistent with release provisions approved by courts in this District and elsewhere.[3]  Of note, the

11  Settlement's release is reasonable as it is limited to claims that relate to transactions in or

12  retentions of RH common stock during the same Class Period ***and*** that relate to the same factual

13  allegations as set forth in the Action (or that relate to the conduct of the Action itself).  *Id*.  In

14  addition, the Settlement's release provision does not release the pending derivative claims against

15  Defendants arising out the same factual predicate.  *Id*.

16       Lead Plaintiffs support the proposed Settlement and believe it represents an excellent

17  recovery on the claims asserted in this Action, and is fair, adequate, reasonable, and in the best

18  interests of the Class.

19

20  [2] The only differences between the definition of the Class proposed under the Settlement and the

21  class that was put forth in Lead Plaintiffs' class certification motion are minor refinements in the

22  list of persons and entities excluded from the class by definition because of their affiliation with
    Defendants.  Specifically, the Class set forth in the Stipulation excludes "any person who is alleged

23  to have participated in the wrongdoing alleged" and clarifies that this exclusion applies only to the
    two Individual Defendants.  *See* Stipulation ¶ 1(h)(v) & n.1.  In addition, the insurance carriers and

24  affiliates of RH are no longer excluded from the definition of the Class in the Stipulation.  *See*
    Stipulation ¶ 1(h).

25  [3] *See, e.g.*, *Hatamian v. Advanced Micro Devices, Inc.*, Case No. 4:14-cv-00226-YGR, slip op. at 7

26  (N.D. Cal. Mar. 6, 2018), ECF No. 367 (approving similar release); *In re Sunpower Sec. Litig.*,
    Case No. 3:09-cv-5473-RS, slip op. at 3 (N.D. Cal. July 3, 2013), ECF No. 268 (same); *see*

27  *generally Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (a class
    release may release claims not asserted in the action as long as they arise from the same set of

28  factual allegations); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1287-88 (9th Cir. 1992) (same).

1

**B.     The Plan Of Allocation**

2

The proposed Plan of Allocation, which is set forth in the Notice to be mailed to Class

3

Members, is similar to plans of allocation approved in numerous other securities class actions in this

4

District and elsewhere.[4]   The Plan allocates the Net Settlement Fund among Class Members who

5

submit valid Claim Forms on a *pro rata* basis based on the amount of each claimant's Recognized Claim.

6

The formula for determining each claimant's Recognized Claim is properly based on Lead

7

Plaintiffs' damages expert's calculations of the amounts by which the price of RH common stock

8

was artificially inflated at various points during the Class Period.   The formula properly takes into

9

consideration when the claimant purchased the shares and, if the claimant sold the shares, when it

10

sold them.   Lead Plaintiffs support the Plan of Allocation and believe it is fair and reasonable, and

11

should be approved together with the Settlement at the Settlement Hearing.

12

**III.    ARGUMENT**

13

**A.     The Court Should Grant Preliminary
Approval Of The Proposed Settlement**

14

15

Strong judicial policy favors settlement of class actions.   *See, e.g., Class Plaintiffs*, 955

16

F.2d at 1276; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *West v. Circle*

17

*K Stores, Inc.*, 2006 WL 1652598, at *1 (E.D. Cal. June 13, 2006).   Settlements of complex cases

18

greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy

19

resolution of justice.

20

A district court's review of a proposed class action settlement is a two-step process.   First,

21

the court performs a preliminary review of the terms of the proposed settlement to determine

22

whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1); and

23

second, after notice has been provided and a hearing has been held, determines whether to grant

24

final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2); *see also Huddlestun v. Harrison*

25

26

---

[4] *See, e.g.*, *Hefler v. Wells Fargo & Co.*, Case No. 3:16-cv-05479-JST, slip op. at 2 (N.D. Cal. Dec. 20, 2018), ECF No. 253 (approving similar Plan of Allocation); *Hatamian v. Advanced Micro Devices, Inc.*, Case No. 4:14-cv-00226-YGR, slip op. at 2 (N.D. Cal. Mar. 2, 2018), ECF No. 363 (same).

27

28

*Glob., LLC*, 2018 WL 3752368, at *2 (S.D. Cal. Aug. 7, 2018); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). A court grants preliminary approval to authorize notice to the Class upon a finding that it "will likely be able" to approve the Settlement as fair, reasonable, and adequate at the final approval hearing. Fed. R. Civ. P. 23(e)(1)(B).[5]

The Settlement here merits preliminary approval.[6]

### 1. The Proposed Settlement Is The Product Of Good Faith, Arm's-Length Negotiations Among Experienced Counsel Mediated By An Experienced Private Mediator

The fact that the Parties reached the Settlement after arm's-length negotiations between experienced counsel and with the assistance of an experienced mediator creates a presumption of its fairness. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"); *see also Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *4-5 (N.D. Cal. July 18, 1997).

During the two mediation sessions, the Parties fully explored the strengths and weaknesses of their respective claims and defenses. The negotiations focused on the complex and heavily disputed issues of whether RH or the Individual Defendants made misstatements and acted with the requisite scienter, as well as on loss causation issues. Representatives of Lead Plaintiffs attended both mediation sessions and actively participated in, and were informed of, the progress of settlement negotiations.

---

[5] This standard for preliminary approval of class action settlements was newly established by amendments to Rule 23(e) that became effective on December 1, 2018. Prior to those amendments, courts had developed a standard for preliminary approval through case law that was substantively similar to the current standard but phrased differently. A common formulation was that the court should grant preliminary approval if "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, at *4 (N.D. Cal. Jan. 30, 2019); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (same).

[6] Lead Plaintiffs will more fully address the reasonableness of the Settlement at final approval.

The mediation process demonstrates that the Settlement was hard-fought and negotiated at arm's length.  Judge Phillips, a former federal judge with more than 25 years of experience in mediating complex civil litigation, facilitated the mediation process.  As courts in this District and elsewhere have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

Courts have also given considerable weight to the opinion of experienced and informed counsel who support settlement.  In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017); *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same). Here, Lead Counsel has a thorough understanding of the merits and risks of the Action and extensive experience in securities litigation.  Lead Counsel's and Lead Plaintiffs' beliefs in the fairness and reasonableness of this Settlement warrant a presumption of reasonableness.

In addition, the Parties reached the agreement to settle only after conducting extensive discovery, which included obtaining and reviewing 10 million pages of documents from Defendants and third parties and taking or defending 15 depositions, including the depositions of a number of high-level employees of RH.  The extensive discovery conducted provided Lead Plaintiffs and Lead Counsel with ample information to ascertain the strengths and risks of the claims asserted in the Action and for their conclusion that the $50 million Settlement was fair and reasonable given the risks of the case.

In sum, the substantial recovery to the Class, the arm's-length nature of the negotiations, and the participation of sophisticated counsel throughout the Action support a finding that the proposed Settlement is fair, reasonable, and adequate to justify notice to the Class and a hearing on final approval.

1

2

### 2. The Proposed Settlement Has No Obvious Deficiencies And Does Not Improperly Grant Preferential Treatment To Class Representatives Or Segments Of The Class

3

4

The Settlement "has no obvious deficiencies [and] does not improperly grant preferential

5

treatment to class representatives or segments of the class[.]" *Young v. Polo Retail, LLC*, 2006 WL

6

3050861, at *5 (N.D. Cal. Oct. 25, 2006). The $50 million recovery constitutes a significant and

7

certain benefit for Class Members. Subject to Court approval, and pursuant to Lead Plaintiffs'

8

approval, Lead Counsel will seek attorneys' fees of 15% of the Settlement Fund, and

9

reimbursement of no more than $950,000 in Litigation Expenses. Lead Plaintiffs will receive

10

distributions from the Net Settlement Fund in accordance with the Plan of Allocation in the same

11

manner as all other Class Members, and will also seek reimbursement of costs incurred as a result

12

of their representation of the Class, as authorized by the PSLRA, in an amount not to exceed

13

$10,000 in aggregate. As discussed below, the proposed Plan of Allocation for allocating the Net

Settlement Fund among Class Members who submit valid Claim Forms is fair and reasonable.

14

15

### 3. The Proposed Settlement Falls Well Within The Range Of Reasonableness And Warrants Notice And A Hearing On Final Approval

16

At the preliminary approval stage, the Court need only determine whether it "will likely be

17

able" to approve the Settlement, Fed. R. Civ. P. 23(e)(1), or, in other words, whether the

18

Settlement "falls within the range of possible approval." *Reynolds v. Direct Flow Med., Inc.*, 2019

19

WL 1084179, at *4 (N.D. Cal. Mar. 7, 2019) (citation omitted). Because the proposed $50 million

20

Settlement represents a favorable recovery for the Class in light of the risks of the litigation and the

21

potential outcomes at trial, Lead Plaintiffs believe that the Settlement falls well within the range of

22

possible approval.

23

In considering whether to enter into the Settlement, Lead Plaintiffs, represented by counsel

24

experienced in securities litigation, weighed the risks inherent in establishing all the elements of

25

their claims, including risks of proving falsity, Defendants' scienter, loss causation, and recoverable

26

damages, as well as the expense and likely duration of the Action. *See Churchill Vill., L.L.C. v.*

27

*Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration

28

of further litigation as factors supporting final approval of settlement).

1    Lead Plaintiffs agreed to settle this Action on these terms based on their careful

2  investigation and evaluation of the facts and law relating to the allegations in the Complaint and

3  consideration of the substantial evidence developed in discovery, and the positions and views

4  expressed by the mediator and Defendants during the settlement negotiations.  *See Louie v. Kaiser*

5  *Found. Health Plan, Inc.*, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels'

6  extensive investigation, discovery, and research weighs in favor of preliminary settlement

7  approval.").

8    Lead Plaintiffs and Lead Counsel believe the $50 million Settlement is an excellent result

9  in light of the substantial challenges that Lead Plaintiffs and the Class would face in proving that

10  the Defendants' alleged misstatements were false and that Defendants made the misstatements

11  with scienter.  Defendants contended that, contrary to Lead Plaintiffs' allegations, the Company

12  had suffered unexpected short-term supply chain issues relating principally to one supplier of RH

13  Modern products and, accordingly, the statements they made about the launch of RH Modern and

14  the Company's inventory levels were accurate at the time they were made.  Defendants also

15  argued that the alleged misstatements only applied to a small percentage of RH's business and,

16  accordingly, were not material.  Defendants further contended that, even if any of their statements

17  were false or misleading, they did not have any intent to mislead investors and did not make the

18  statements with deliberate recklessness.  Defendants would further assert that they had no motive

19  to commit fraud and that the Individual Defendants did not benefit from the alleged fraud by

20  selling shares during the Class Period.

21    Thus, while Lead Plaintiffs' allegations were sufficiently supported to survive Defendants'

22  motion to dismiss, proving the claims at trial through admissible evidence was far from certain.

23  This was not a case in which the SEC or other government entity brought a related investigation or

24  asserted a parallel enforcement action, and RH never restated its financial statements.

25    Lead Plaintiffs would also have faced substantial challenges in proving that the revelations

26  of the truth about Defendants' false and misleading statements caused the declines in the price of

27  RH common stock and establishing the amount of Class-wide damages.  Defendants had

28

1  substantial arguments that the price declines on many of Lead Plaintiffs' alleged corrective
2  disclosure dates were not due to revelation of the alleged misstatements or omissions.

3      A comparison of the $50 million recovery to the potential damages that might be recovered
4  for the Class at trial, given the risks of the litigation, supports the reasonableness of the Settlement.
5  Lead Plaintiffs' damages expert has estimated that the maximum damages that could be
6  realistically established at trial, assuming complete success in proving liability and 100% valid
7  claims from the Class post-trial, and accounting only for loss causation risks, would range from
8  $117.1 million to $306.5 million.  Accordingly, the $50 million Settlement represents a recovery
9  of approximately 43% to 16% of the *maximum* realistic damages for the Class.  However, if certain
10  other of Defendants' loss causation and damages arguments were accepted, the maximum damages
11  that could be established at trial might have been even lower than that range and, of course, Lead
12  Plaintiffs may have lost at summary judgment, trial, or an appeal on some or all of their claims,
13  resulting in a recovery of little or nothing.  Lead Plaintiffs submit that the Settlement is a very
14  favorable outcome given the substantial risks of continuing with this complex litigation, and the
15  uncertainty inherent in establishing liability, as well as the advantages of obtaining an immediate
16  cash benefit for Class Members and avoiding the substantial expenses and delays of further
17  litigation.[7]

18      Lead Plaintiffs, having considered the serious risks of continued litigation, respectfully
19  submit that if the Court preliminarily approves the Settlement, the Court ultimately will find that
20  the Settlement is fair, reasonable, and adequate and is deserving of final approval.

---

[7] *See, e.g., Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016)
("Settlement Amount represent[ing] approximately 14 percent of likely recoverable aggregate
damages at trial" was "well within the range of percentages approved in other securities-fraud
related actions"); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13,
2015) (settlement representing "approximately 8% of the maximum recoverable damages …
equals or surpasses the recovery in many other securities class actions"); *Omnivision*, 559 F. Supp.
2d at 1042 (settlement representing 9% of maximum damages fair and reasonable and "higher than
the median percentage of investor losses recovered in recent shareholder class action settlements").
Also, as set forth in the proposed Notice, the estimated average recovery (before the deduction of
Court-approved fees, expenses and costs) per eligible share is $1.22.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiffs also seek preliminary approval of the proposed Plan of Allocation of the settlement proceeds, which is set forth in the Notice to be mailed to Class Members.  The Court's review of the proposed Plan of Allocation for a class action settlement under Rule 23 is governed by the same standards of review applicable to the settlement itself – the plan must be fair and reasonable. *See Class Plaintiffs*, 955 F.2d at 1284.  The Plan of Allocation, which Lead Counsel developed with the assistance of Lead Plaintiffs' damages expert, provides a fair, reasonable and equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Claim Form.

In developing the Plan of Allocation, Lead Plaintiffs' expert calculated the estimated amount of artificial inflation in the per-share closing price of RH common stock that was allegedly caused by Defendants' alleged false and misleading statements and omissions. *See* Notice ¶ 58.  In so doing, he considered the price changes in RH common stock in reaction to the public disclosures that allegedly corrected the alleged misrepresentations and omissions and adjusted for market and industry factors. *Id*.

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of RH common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided.  The calculation of Recognized Loss Amounts will depend upon several factors, including when the stock was purchased and sold and the purchase and sales price.  In general, Recognized Loss Amounts will be the lower of: (i) the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, and (ii) the difference between the actual purchase price and sales price.  Notice ¶¶ 60, 70.  For shares sold during or after the 90-day period following the end of the Class Period, the Plan also limits Recognized Loss Amounts based on the average price of the stock during that 90-day period, consistent with the PSLRA.  Notice ¶¶ 70(C), 70(D).  Under the Plan of Allocation, claimants who purchased shares during the Class Period but did not hold those shares through at least one of the alleged corrective disclosures will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the

alleged fraud.  Notice ¶ 60.  The sum of a claimant's Recognized Loss Amounts for all of his, her, or its Class Period purchases is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  Notice ¶¶ 71, 79.

One hundred percent of the Net Settlement Fund will be distributed to Eligible Claimants. Moreover, if any funds remain after an initial distribution to Eligible Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective.  Notice ¶ 82.  The Plan of Allocation also identifies the Investor Protection Trust as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to Eligible Claimants have been completed. *Id*.  The Investor Protection Trust, a 501(c)(3) nonprofit organization devoted to investor education, is an appropriate *cy pres* recipient because of the nature of the securities fraud claims asserted in the Action, and courts in this District have approved it as a *cy pres* recipient in other similar actions in recent years, including *Hefler v. Wells Fargo & Company*, Case No. 3:16-cv-05479-JST (N.D. Cal.) (Tigar, J.), *In re Geron Corp. Securities Litigation*, Case No. 3:14-CV-01224-CRB (N.D. Cal.) (Breyer, J.), and *In re HP Securities Litigation*, Case No. 3:12-CV-05980-CRB (N.D. Cal.) (Breyer, J.).  Payment will only be made to this charity when the residual amount left for re-distribution to Class Members is so small that a further re-distribution would not be cost effective (for example, where the administrative costs of conducting the additional distribution would largely subsume the funds available).

Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who submit valid claims.

## V.   THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND THE PROPOSED PLAN FOR PROVIDING NOTICE TO THE CLASS AND PROCESSING CLAIMS

### A.   Retention of A.B. Data

Lead Plaintiffs propose that the notice and claims process be administered by A.B. Data, Ltd. ("A.B. Data"), an independent settlement and claims administrator with extensive experience

1    handling the administration of securities class actions.   A copy of A.B. Data's firm resume is

2    attached hereto as Exhibit 3.

3        A.B. Data was selected after a competitive bidding process in which four firms submitted

4    proposals to be selected as administrator.   All of the proposals received involved comparable

5    methods of providing notice and claims processing, including use of first-class mail and

6    identifying potential Class Members through brokers and nominee owners.   Lead Counsel has

7    engaged A.B. Data to serve as settlement administrator in five other cases in the past two years and

8    has found A.B. Data to be a reliable administrator for these types of cases.

9        **B.    <u>Proposed Notice Procedures</u>**

10       Lead Plaintiffs respectfully submit that the Court should approve the form and content of

11   the proposed Notice and Summary Notice.   *See* Stipulation, Exs. A-1 and A-3.   The Notice is

12   written in plain language and clearly sets out the relevant information and answers to most questions

13   that Class Members will have.   Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice

14   objectively and neutrally apprises all Class Members of (among many other disclosures) the nature

15   of the Action, the definition of the Class, the claims and issues, that the Court will exclude from the

16   Class any Class Member who requests exclusion (and sets forth the procedures and deadlines for

17   doing so), and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B).

18       With respect to items relating to the Settlement, the Notice also satisfies the separate

19   disclosure requirements imposed by the PSLRA.   *See* 15 U.S.C. § 78u-4(a)(7).   It states the amount

20   of the Settlement on an absolute and per-share basis; provides a statement concerning the issues

21   about which the Parties disagree; states the amount of attorneys' fees and Litigation Expenses that

22   Lead Counsel will seek; provides the names, address, and telephone number of Lead Counsel, who

23   will be available to answer questions from Class Members; and provides a brief statement

24   explaining the reasons why the Parties are proposing the Settlement.   *Id.*

25       The Notice also meets the Northern District of California Procedural Guidance for Class

26   Action Settlements in that it includes, among other things, (1) "contact information for class

27   counsel to answer questions"; (2) the address for the settlement website; and (3) "instructions on

28   how to access the case docket."   N.D. Cal. Proc. Guidelines ¶ 3.   The Notice will also disclose the

1  date, time, and location of the Settlement Hearing and the procedures and deadlines for the

2  submission of Claim Forms, requests for exclusion from the Class, and objections to any aspect of

3  the Settlement, the Plan of Allocation, or attorneys' fees and expenses.[8]

4       The proposed method for disseminating notice, which is set forth in the Preliminary Approval

5  Order submitted herewith, also readily meets the standards under the Federal Rules and due

6  process.  Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the

7  best notice that is practicable under the circumstances, including individual notice to all members

8  who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule

9  23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would

10  be bound" by a proposed settlement, voluntary dismissal, or compromise.  Fed. R. Civ. P. 23(e)(1).

11       If the Court preliminarily approves the Settlement, RH will provide the names and addresses

12  of the record holders or purchasers of RH common stock during the Class Period, to the extent

13  reasonably available to RH for the purpose of identifying and giving notice to the Class.  *See*

14  Stipulation ¶ 24.  A.B. Data will mail the Notice and Claim Form (the "Notice Packet") to all such

15  identified potential Class Members.  A.B. Data will also send notice to brokerage firms and other

16  nominees who purchased RH common stock during the Class Period on behalf of other beneficial

17  owners.  These nominee purchasers will be required to either forward the Notice Packet to their

18  customers or provide the names and addresses of the beneficial owners to A.B. Data, which will

19  then promptly send the Notice Packet by first-class mail to such identified beneficial owners (or by

20  email if provided).  A.B. Data will also cause the Summary Notice, which provides an abbreviated

21  description of the Action and the proposed Settlement and explains how to obtain the more

22  detailed Notice, to be published once in *The Wall Street Journal* and transmitted over the *PR*

23  *Newswire*, a national business-oriented wire service, and will publish the Notice and Claim Form

24  and other materials on a website to be developed for the Settlement.

25

26

27  [8] The Parties have also agreed that, no later than ten calendar days following the filing of the
28  Stipulation with the Court, Defendants shall serve the notice required under the Class Action
Fairness Act, 28 U.S.C. § 1715 (2005), *et seq.* ("CAFA").  *See* Stipulation ¶ 25.

1
2
3
4
5
6
7
8

The proposed plan for providing notice is the same method that has been used in numerous other security class actions.  Courts routinely find that comparable notice programs, combining individual notice by first-class mail to all class members who can reasonably identified, supplemented with publication notice, meet all the requirements of Rule 23 and due process.  *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by mail and publication is the 'best notice practicable under the circumstances,' as mandated by FRCP 23(c)(2)(B)"); *In re Sorbates Direct Purchaser Antitrust Litig.*, 2002 WL 31655191, at *1 (N.D. Cal. Nov. 15, 2002).

9

**C.    Claims Processing**

10
11
12
13
14
15

The net proceeds of the Settlement will be distributed to Class Members who submit eligible Claim Forms with required documentation to A.B. Data.  A.B. Data will review and process the claims under the supervision of Lead Counsel, will provide claimants with an opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and will then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.[9]

16
17
18
19
20

A.B. Data estimates that a total of 75,000 Notice Packets will be mailed and that approximately 15,000 claims will be received (a 20% response rate is estimated).  These estimates are based on the experience of A.B. Data and Lead Counsel in comparable securities class action settlements.  Summary information for three recent cases in which BLB&G acted as lead counsel and A.B. Data was retained as the settlement administrator is attached hereto as Exhibit 4.

21

**D.    Estimated Notice and Administrative Costs**

22
23
24
25

A.B. Data's fees for administration of the Settlement are charged on a per-claim basis and its expenses will be billed separately (including expenses for printing and mailing the Notice Packet, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline).  Because the costs are dependent on

26
27
28

[9] The Settlement is not a claims-made settlement.  If the Settlement is approved, Defendants will have no right to the return of any portion of the Settlement Fund based on the number or value of Claims submitted.  *See* Stipulation ¶¶ 16, 18.

how many Notice Packets are ultimately mailed and how many claims are ultimately received and processed, at this time only an estimate of the total Notice and Administration Costs can be provided.  Based on the estimates of Notice Packets to be mailed and claims received discussed above, A.B. Data estimates that the total Notice and Administration Costs for the Action will be approximately $275,000 to $300,000.  These costs are necessary in order to effectuate the Settlement and are reasonable in relation to the value of the Settlement (the estimated administrative costs represent 0.6% of the Settlement Amount).  If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.  *See* Stipulation ¶¶ 12, 17.

## VI.     ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFFS' EXPENSES

As explained in the Notice (Stipulation, Ex. A-1, at pages 1-2 & ¶ 39), Lead Counsel intends to seek an award of attorneys' fees of 15% of the Settlement Fund (*i.e.*, 15% of the Settlement Amount, or $7,500,000, plus interest earned thereon at the same rate as the Settlement Fund), and payment of Litigation Expenses not to exceed $950,000.  Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 35 days before the final Settlement Hearing.  However, for purposes of the Court's preliminary review in connection with this motion for preliminary approval of the Settlement, Lead Counsel notes that the fee that Lead Counsel will request, 15%, is the result of an *ex ante* negotiation with a sophisticated Lead Plaintiff, is far below the 25% benchmark percentage for attorneys' fees in the Ninth Circuit, *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989), and is on the low end of the range of percentage fees awarded in comparable class securities class actions with significant contingency fee risks, *see, e.g.*, *Hatamian v. Advanced Micro Devices, Inc.*, Case No. 4:14-cv-00226-YGR, slip op. at 3 (N.D. Cal. Mar. 2, 2018), ECF No. 364 (awarding 25% of $29.5 million settlement); *In re Int'l Rectifier Corp. Sec. Litig.*, Case No. 2:07-cv-02544-JFW, slip op. at 1 (C.D. Cal. Feb. 8, 2010), ECF No. 316 (awarding 25% of $90 million settlement).

Moreover, based on its review of its time records, Lead Counsel anticipates that the requested attorney fee will represent a multiplier on counsel's lodestar of less than one.  Such a multiplier is below the range of multipliers commonly awarded in class actions and other similar

cases. *See, e.g., Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (awarding fee representing a 3.22 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *7 (N.D. Cal. Dec. 6, 2017) (awarding fee representing a 3.66 multiplier), *aff'd*, 2019 WL 1752610 (9th Cir. Apr. 17, 2019); *St. Louis Police Ret. Sys. v. Severson*, 2014 WL 3945655, at *6 (N.D. Cal. Aug. 11, 2014) (awarding 1.5 lodestar multiplier in shareholder derivative action); *see generally Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 & n.6 (9th Cir. 2002) (affirming 3.65 multiplier on appeal and finding that multipliers ranged as high as 19.6, with the most common range from 1.0 to 4.0). If preliminary approval is granted, Lead Counsel will present its total lodestar in connection with its fee application at final approval.

Lead Counsel also intends to seek reimbursement of Litigation Expenses in an amount not to exceed $950,000, which include costs for retention of experts, document management, mediation fees and travel, among other costs. As part of this request, Lead Counsel intends to seek awards for Lead Plaintiffs, pursuant to 15 U.S.C. §78u-4(a)(4), as reimbursement for their time and expenses in representing the Class in an amount up to an aggregate of $10,000. Lead Counsel believes this amount is fully supported by the substantial work that Lead Plaintiffs performed throughout the Action which will be presented to the Court in connection with Lead Plaintiffs' request for reimbursement. N.D. Cal. Proc. Guidelines ¶ 7.

## VII. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement.[10] The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

---

[10] The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be filled in once the Court sets those dates and prior to mailing to Class Members.

| Event | Time for Compliance |
|---|---|
| Deadline to commence mailing the Notice and Proof of Claim to potential Class Members ("Notice Date") | 15 business days after entry of Preliminary Approval Order |
| Deadline for publishing Summary Notice | 10 business days after Notice Date |
| Deadline for filing final approval papers | 35 calendar days prior to Settlement Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to Settlement Hearing |
| Deadline for submitting claim forms | 14 calendar days prior to Settlement Hearing |
| Deadline for filing reply papers (including a report on claims received) | 7 calendar days prior to Settlement Hearing |
| Settlement Hearing | 120 days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter |

Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  As this motion is unopposed, Lead Plaintiffs request that the Court consider this motion for preliminary approval on the papers at this time.  If the Court decides this motion on the papers and enters the Preliminary Approval Order on or before May 13, the Settlement Hearing could be scheduled for September 10, 2019 or as soon thereafter as the Court can schedule.

## VIII.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that this Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order.

1   Dated:  May 6, 2019                        Respectfully Submitted,

2                                              BERNSTEIN LITOWITZ BERGER
                                                  & GROSSMANN LLP
3

4                                              /s Jonathan D. Uslaner
                                               JONATHAN D. USLANER
5                                              jonathanu@blbglaw.com
                                               12481 High Bluff Drive, Suite 300
6                                              San Diego, CA 92130
                                               Tel:    (858) 793-0070
7                                              Fax:    (858) 793-0323

8                                                 --and--
                                               GERALD H. SILK
9                                              jerry@blbglaw.com
                                               AVI JOSEFSON
10                                             avi@blbglaw.com
                                               JOHN C. BROWNE (*Pro Hac Vice*)
11                                             johnb@blbglaw.com
                                               1251 Avenue of the Americas, 44th Floor
12                                             New York, NY 10020
                                               Tel:    (212) 554-1400
13                                             Fax:    (212) 554-1444

14

15                                             *Counsel for Lead Plaintiffs Public School*
                                               *Teachers' Pension & Retirement Fund of*
16                                             *Chicago and Arkansas Teacher Retirement System,*
                                               *and Lead Counsel for the Class*
17

18

19

20

21

22

23

24

25

26

27

28